IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                            No. CR 06-1971 BB

LUIS MIGUEL CAMPAS-MORENO,

        Defendant.

COURT'S FINDINGS OF FACT
AND CONCLUSIONS OF LAW
AND
ORDER DENYING SUPPRESSION MOTION

THIS MATTER came before the Court for an evidentiary hearing on January 5, 2007, in Santa Fe, on Defendant's *Motion to Suppress* [Doc. 21], and having reviewed the briefs of counsel and entertained evidence, the following are the Court's Findings of Fact and Conclusions of Law:

## Findings of Fact

1. On August 16, 2006, at approximately 7:25 AM, Luis Miguel Campas-Moreno was traveling alone eastbound on Interstate 40 in a green 1999 Isuzu Trooper with temporary Colorado tags. Near mile marker #138, in Bernalillo County, Officer Arsenio Chavez of the New Mexico State Police ("NMSP") was westbound and saw Defendant following too closely to a white "dualie" pickup truck. Officer Chavez did a U-turn and pulled behind Mr. Campas and engaged his emergency equipment.

2. **Mr. Campas understands a little English and Officer Chavez speaks broken Spanish. Officer Chavez advised Mr. Campas of the purpose of the traffic stop and requested his driver's license, registration, and proof of insurance. Mr. Campas provided what appeared to be a valid Mexican driver's license and a five-day-old bill of sale from a Colorado auto dealer indicating Miguel Luis Campas-Moreno had purchased the vehicle in a cash transaction.**

3. **Shortly after requesting his driver's license and vehicle information, Officer Chavez instructed Defendant to exit his car and stand in front of the Officer's patrol car. Officer Chavez then issued a citation for following too closely. As Officer Chavez handed him his citation and paperwork, Mr. Campas indicated he wanted to pay the fine rather than appear in court for the violation and began walking toward his vehicle.**

4. **As Mr. Campas returned to his vehicle, Officer Chavez said very loudly, "Excuse me. May I ask a few questions?" Mr. Campas turned around and walked back toward the police cruiser.**

5. **After Mr. Campas explained that he was in Gallup to propose to his girlfriend, Officer Chavez asked for his girlfriend's phone number and they discussed the fact it was a Phoenix area code. Mr. Campas explained she had just moved to Gallup.**

6.  **Defendant was asked if he had weapons, drugs or cash in the Isuzu which he denied and gave verbal permission to search the vehicle.**

7.  **Officer Chavez then provided him a written consent form in both Spanish and English that clearly advised of the right to refuse to consent to the search and if signed, specifically allowed the use of a drug K-9, and if a false compartment was found, to access it by "any means available including drilling or cutting the compartment."**

8.  **Mr. Campas appeared to read and then signed the consent and Officer Chavez visually inspected the vehicle, then brought his drug dog from the back of his police cruiser. The K-9, Chica, alerted to the rear seat of the Isuzu. Officer Chavez observed several screws that were missing from a panel directly below the rear seat in the vehicle. Officer Chavez also smelled something like fresh paint or "bondo" under the carpet. At this point a lieutenant from the NMSP arrived and specifically asked Mr. Campas for consent to cut open the area under the seat. Defendant again consented and protested that there could be no new compartment as he just bought the vehicle.**

9.  **Officer Chavez cut a small hole through the metal under the seat and placed a fiber optic viewing scope through the hole. Officer Chavez saw what appeared to be saran wrapped bundles inside of the compartment. Based on his training**

and experience, Officer Chavez believed that these bundles contained illegal narcotics. Mr. Campas was taken into custody at this time.

10. Defendant and the Isuzu Trooper were both transported to the NMSP office in Albuquerque. Once at the NMSP office, Officer Chavez removed the rear seat of the vehicle and cut open the false compartment. The compartment revealed eleven individually wrapped bundles. Task Force Officer Dunlap field tested one of the bundles; it tested positive for methamphetamine.

## Conclusions of Law

1. A traffic stop is analogous to an investigative detention and is analyzed under the principles stated in *Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Caro*, 248 F.3d 1240, 1243 (10th Cir. 2001). Whether an investigative detention is reasonable depends upon a two-part inquiry: (1) was the officer's action justified at its inception, and (2) was the officer's action reasonably related in scope to the circumstances which justified the initial interference. *United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995).

2. An officer conducting a routine traffic stop may request a driver's license, vehicle registration, proof of insurance and the like, run a computer check on the driver or the vehicle, and issue a warning or citation. *Caro*, 248 F.3d at 1244.

3.  The subjective motivations of an officer who stops a vehicle are not relevant to whether a stop is reasonable under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 813 (1996).

4.  The traffic stop was justified, based on Mr. Campas following too close to the white dualie pickup truck. During the stop Officer Chavez developed reasonable suspicion regarding the transportation of drugs based on the temporary Colorado tags resulting from a very recent cash purchase of the vehicle, Defendant's Mexican driver's license, and the strong smell of fruity air freshener. *See United States v. McRae*, 81 F.3d 1528, 1533 (10th Cir. 1996); *United States v. Raynor*, 108 Fed. Appx. 609 (10th Cir. 2004). Defendant voluntarily consented to a search of his vehicle, both verbally and in writing under a very explicit delineation of the scope of the consent in Spanish.

5.  Once K-9 Chica alerted, Officer Chavez had probable cause and the Defendant again voluntarily and specifically consented to drilling into the false compartment in the rear of the vehicle.

### ORDER

For the above stated reasons, Defendant's *Motion to Suppress* is DENIED.

DATED this 17th day of January, 2007.

                                                                                 *Bruce D. Black*
                                                                                 **BRUCE D. BLACK**
                                                                                 **United States District Judge**